**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 03-CV-0328-REB-OES

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

JOEL M. ARNOLD,
GRANT P. GRAHAM,
THOMAS W. HALL,
DOUGLAS K. HUTCHINS,
JOHN M. WALKER, and
RICHARD L. WESTON,

    Defendants.

## ORDER CONCERNING WESTON'S MOTION TO DISMISS

**Blackburn, J.**

This matter is before me on **Defendant Richard L. Weston's Motion To Dismiss** [#76], filed October 13, 2006.[1] The plaintiff filed a response [#78] and Weston filed a reply [#79]. I deny the motion.

## I. JURISDICTION

This case is a civil enforcement action brought by the United States Securities and Exchange Commission (SEC). I have jurisdiction over this case under § 22(a) of the Securities Act, 15 U.S.C. § 77u(a), and § 21(e) of the Securities Exchange Act, 15 U.S.C. §§ 78u(e) and 78aa.

---

[1] I will cite allegations in the complaint by their paragraph number (¶ 1).

## II.  STANDARD OF REVIEW

When ruling on a motion to dismiss under Rule 12(b)(6), I must determine whether the allegations of the complaint are sufficient to state a claim within the meaning of Fed.R.Civ.P. 8(a).  I must accept all well-pleaded allegations of the complaint as true. **McDonald v. Kinder-Morgan, Inc.**, 287 F.3d 992, 997 (10th Cir. 2002).  "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." **Fernandez-Montes v. Allied Pilots Association**, 987 F.2d 278, 284 (5th Cir. 1993); **see also Ruiz v. McDonnell**, 299 F.3d 1173, 1181 (10th Cir. 2002) ("All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."), **cert. denied**, 123 S.Ct. 1908 (2003).  I review the complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'" **Ridge at Red Hawk, L.L.C. v. Schneider**, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting **Bell Atlantic Corp. v. Twombly**, – U.S. –, 127 S.Ct. 1955, 1969, 1974, – L.Ed.2d – (2007)).  "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." **Id.** (emphases in original).[2]  As detailed below, the enhanced

---

[2] Until recently, the standard of review for a motion under Rule 12(b)(6) was whether "'it appear[ed] beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" **Beedle v. Wilson**, 422 F.3d 1059, 1063 (10th Cir. 2005) (quoting **Conley v. Gibson**, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).  The Tenth Circuit has noted that the relationship between the standard announced in **Bell Atlantic Corp.** and the Supreme Court's contemporaneous decision in **Erickson v. Pardus**, – U.S. –, 127 S.Ct. 2197, 2200, – L.Ed.2d – (2007), in which the Supreme Court upheld the notice pleading standards of Rule 8(a)(2), is not entirely clear.  **See Alvarado v. KOB-TV, L.L.C.**, 493 F.3d 1210, 1215 n.2 (10th Cir. 2007).  Nevertheless, my decision with respect to the 12(b)(6) motion would be the same under either the old **Conley v. Gibson** "no set of facts" standard or the **Bell Atlantic Corp.** plausibility standard.  **See id.**

2

pleading standard of FED. R. CIV. P. 9(b) is applicable to some of the plaintiff's claims.

Weston argues that the SEC's allegations against him are inadequate to state claims under § 10(b), § 17(a)(1), (a)(2), and (a)(3), § 13(b)(5), and for aiding and abetting. The SEC argues that its allegations are adequate.

### III. CLAIMS UNDER § 17(A)(1) AND § 10(b) FRAUD ALLEGATIONS & FED. R. CIV. P. 9(b)

Weston argues that the SEC's claims under 17(a)(1) of the Securities Act (First Claim) and § 10(b) of the Securities Exchange Act (Third Claim) must be dismissed because the SEC has not alleged scienter adequately. In addition, Weston argues that the SEC has not alleged adequately that Weston made a misrepresentation or omission or, alternatively, that Weston engaged in a scheme to defraud. The elements of these claims are essentially the same, and require the SEC to allege i) a misrepresentation or omission; ii) of a material fact; iii) in connection with the purchase or sale of a security; iv) with scienter; and v) using a method within the jurisdictional means. ***S.E.C. v. Nacchio***, 438 F.Supp.2d 1266, 1278 (D. Colo. 2006).

#### A. Scienter

Scienter is an essential element of both a § 17(a)(1) and a § 10(b) claim. Both of these claims are fraud claims, and, thus, the pleading standard of FED. R. CIV. P. 9(b) is applicable. Rule 9(b) requires fraud to be pled with particularity. To satisfy the particularity requirement, a plaintiff is generally required to "set forth the time, place and contents of the false representation, the identity of the party making the false statements, and the consequences thereof." ***Koch v. Koch Industries, Inc.***, 203 F.3d 1202, 1236 (10th Cir. 2000) (citation and quotation omitted). However, "(m)alice, intent, knowledge, and other condition of mind of a person may be averred generally." FED. R. CIV. P. 9(b).

3

In the context of securities fraud claims, scienter means an intent to deceive, manipulate, or defraud. ***City of Philadelphia v. Fleming Companies, Inc.***, 264 F.3d 1245, 1259 (10th Cir. 2001). Proof of recklessness is sufficient to establish scienter. In this context, a defendant acts recklessly when his or her conduct amounts to an extreme departure from the standards of ordinary care, and presents a danger of misleading buyers or sellers, which danger is either known to the defendant or is so obvious that the defendant must have been aware of the danger. ***Id***. at 1260.

The SEC's complaint concerns two transactions undertaken by Qwest Communications International, Inc. The parties refer to these transactions as the Genuity transaction and the Arizona School Facilities Board (ASFB) transaction. Each named defendant was employed by Qwest at the time of these transactions, and the SEC's claims against the individual defendants are based on the individual defendants' participation in one or both of these transactions. Weston is alleged to have been involved only in the Genuity transaction.

At the time of the key events alleged in the complaint, Weston was Senior Vice President in Product Development for the Internet Solutions division of Qwest. The Internet Solutions Division was part of Qwest's Global Business Unit. Weston was a member of the sales team working on a contract for network services between Qwest and Genuity. In early September, 2000, defendant Joel Arnold made it clear to Weston and others on the Genuity sales team that the Genuity contract had to generate 100 million dollars in revenue for the third quarter of 2000. ¶ 37. The SEC alleges that at Weston's suggestion the Genuity contract was split factitiously into an equipment sale contract and a services contract, and that based on this split, the Global Business Unit and Qwest

improperly recognized 100 million dollars in revenue in the third quarter of 2000.

The SEC alleges that Weston and other defendants manipulated the Genuity transaction

> solely for the purpose of inflating materially the company's revenues and overstating its business performance. Defendants determined that they were falling short of quarterly revenue targets for the quarters ending September 30, 2000, and June 30, 2001, which would in turn cause Qwest to miss announced revenue projections for the quarters. To avoid this, the defendants artificially filled the revenue gap by fraudulently accelerating revenue for the [Genuity transaction].

¶ 1.

These allegations of Weston's knowledge and intent, i.e., his scienter, are somewhat general, but they are sufficient to satisfy the pleading requirements of FED. R. CIV. P. 9(b). Again, under Rule 9(b), scienter "may be averred generally."

Weston notes that I previously dismissed state law fraud claims against Weston brought by private plaintiffs in complaints that allege also that Weston committed securities fraud via his participation in the Genuity transaction. ***Teachers' Retirement System of Louisiana v. Qwest, et al.***, Civil Action No 04-cv-00782-REB-CBS (*Teachers*) and ***Shriners Hospital for Children v. Qwest, et al.***, Civil Action No. 04-cv-00781-REB-CBS (*Shriners*). The complaints in these cases do describe Weston's participation in the Genuity transaction, and I previously dismissed fraud claims against Weston in these cases. However, my discrete analysis of the SEC's complaint in this case, with particular attention to the allegations of scienter, demonstrates that the SEC has satisfied the Rule 9(b) standard in its pleading of Weston's scienter.

### B. False or Misleading Statement or Scheme to Defraud

Weston argues also that the SEC has not alleged sufficiently that he made a false or misleading statement (or omission) that he knew or should have known would reach

5

potential investors. The SEC has not alleged that Weston made such a statement, but such a statement is not the only possible basis for liability. The SEC has alleged that Weston "employed a device, scheme, or artifice to defraud" in violation of § 17(a) and § 10(b). Complaint, ¶¶ 98, 104. The details of this device, scheme, or artifice, the manipulation of the Genuity transaction, are described in some detail in the complaint. Liability for securities fraud can be based on either "a material misstatement (or omission) or the commission of a manipulative act." **Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.**, 511 U.S. 164, 177 (1994). The SEC sufficiently has alleged manipulative acts that properly can be the basis for claims under § 17(a)(1) and § 10(b). I reject Weston's argument that the SEC has not alleged sufficiently his employment of a device, scheme, or artifice to defraud.

### C.  Conclusion

I conclude that the allegations in the complaint are sufficient to state claims against Weston under § 17(a)(1) (First Claim) and § 10(b) (Third Claim).

### IV.  CLAIMS UNDER § 17(a)(2) AND (a)(3)

Weston notes that the SEC's claim under § 17(a)(2) and (a)(3) (Second Claim) shares the same elements as the fraud claims discussed above, except that this claim requires proof of negligence, rather than proof of scienter. **S.E.C. v. Nacchio**, 438 F.Supp.2d 1266, 1278 (D. Colo. 2006). He argues that this claim fails because the SEC has not alleged that Weston made any false statements or omissions. As with the fraud claims, however, engaging in a "transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser" is sufficient to establish liability. § 17(a)(3) (15 U.S.C. § 77q(a)(3)). The SEC's allegations concerning

6

Weston's participation in a scheme to defraud, as discussed above, are sufficient to sustain this claim.

## V.  § 13(b)(5) CLAIM

The SEC alleges in its § 13(b)(5) claim (Claim Four) that Weston falsified Qwest's books, records, or accounts.  This claim also includes Rule 13b2-1, which was promulgated under § 13(b)(5).  That rule provides that no person shall "directly or indirectly, falsify or cause to be falsified, any book, record or account."  The SEC has alleged that Weston knowingly manipulated the Genuity transaction in an effort to accomplish the goal of permitting Qwest to recognize revenue from the transaction in order to meet Qwest's quarterly revenue predictions.  The SEC has alleged also that Weston knew that the manipulation of the transaction would result in a misrepresentation of the revenue recognized in the transaction.  These allegations are sufficient to support a § 13(b)(5) claim based on an allegation that Weston directly or indirectly caused to be falsified Qwest's books, records, or accounts.

## VI.  AIDING AND ABETTING

The SEC alleges that Weston aided and abetting Qwest's alleged violations of § 10(b) (Third Claim), § 13(a) (Fifth Claim), and § 13(b)(2) (Sixth Claim).  In support of these claims, the SEC must allege sufficiently the following elements: I) a primary violation of the securities laws by another; ii) knowledge of the primary violation by the aider and abettor; and iii) substantial assistance by the aider and abettor in the commission of the primary violation.  Weston argues that the SEC has not alleged that he had actual knowledge of the primary violations or that he provided substantial assistance in the commission of the primary violations.  I disagree.

As discussed above, I conclude that the SEC's allegations in support of its fraud claims are sufficient to allege that Weston was aware of the broad purpose of the manipulation of the Genuity transaction – an effort to ensure that Qwest would meet its quarterly revenue predictions – and that the manipulation of the Genuity transaction was undertaken to factitiously recognize revenue in an effort to serve this broad purpose. This is sufficient to allege Weston's knowledge of the alleged primary violations. The SEC also describes specific actions Weston allegedly took to manipulate the Genuity transaction to accomplish the desired recognition of revenue. This is sufficient to allege Weston's substantial assistance. The SEC's allegations are sufficient to sustain the aiding and abetting claims.

## VII.  ORDER

**THEREFORE, IT IS ORDERED** that **Defendant Richard L. Weston's Motion To Dismiss** [#76], filed October 13, 2006, is **DENIED**

Dated September 24, 2007, at Denver, Colorado.

                                              **BY THE COURT:**

                                              <u>s/ Robert E. Blackburn</u>
                                              **Robert E. Blackburn**
                                              **United States District Judge**